# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JACOB SANTIAGO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 14-795 RGA |
| | : | |
| OFFICER MACNAMARA and OFFICER OFFICER SHAUB, | : : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT,
## IN LIEU OF AN ANSWER

**CITY OF WILMINGTON LAW DEPT.**

Daniel F. McAllister (I.D. #4887)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175
*Attorney for Defendants*

December 16, 2014

# **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT .....................................................................................................1

STATEMENT OF FACTS  ............................................................................................................2

ARGUMENT ..................................................................................................................................3

      I.      STANDARD ........................................................................................................3

      II.     THE DEFENDANT OFFICERS' USE OF FORCE WAS OBJECTIVELY REASONABLE UNDER THE TOTALITY OF THE CIRCUMSTANCES, AND, THEREFORE, PLAINTIFF'S CLAIM MUST BE DISMISSED ..........................6

      III.    THE DEFENDANT OFFICERS ENJOY QUALIFIED IMMUNITY FROM PLAINTIFF'S EXCESSIVE FORCE CLAIM AND, THEREFORE, IT MUST BE DISMISSED ...............................................................................................10

CONCLUSION .............................................................................................................................13

# TABLE OF CITATIONS

**CASES**

*Adkins v. Rumsfeld*, 450 F.Supp.2d 440 (D. Del. 2006) .................................................................4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................5, 6

*Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564 (3d Cir. 1986). ..................4, 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................3, 4

*Beckwith v. Sherwood*, 2001 U.S. Dist. LEXIS 24079 (E.D. Pa. Oct. 11, 2001). ..........................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................3

*Bell v. Wolfish*, 441 U.S. 520 (1979) ...............................................................................................8

*Big Apple BMW, Inc. v. BMW of North America, Inc.*,
   974 F.2d 1358 (3d Cir. 1992)........................................................................................................5

*Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010)............................................................9, 10

*Carrigan v. State*, 957 F. Supp. 1376 (D. Del. 1997) .....................................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................4, 6

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir. 1987).........................................................6

*Clark v. Condon*, 2002 U.S. Dist. LEXIS 17831 (D. Del. Sept. 20, 2002) .....................................8

*Fraser v. Pennsylvania State System of Higher Education*, 1994 U.S. Dist. LEXIS 7409
   (E.D. Pa. June 6, 1994) ................................................................................................................6

*Forrester v. San Diego*, 25 F.3d 804 (9th Cir. 1994)..................................................................9, 10

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005)................................................................................11

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976).....................................................6

*Graham v. Connor*, 490 U.S. 386 (1989) ...................................................................................7, 8

*Hunter v. Bryant*, 502 U.S. 224 (1991)....................................................................................10, 11

*James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012),..........................................................4

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ..............................................................................3

*Lamb-Bowman v. Delaware State Univ.*, 152 F. Supp.2d 553 (D. Del. 2001) ...............................5

*Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....................5

*Mitchell* v. *Forsyth,* 472 U.S. 511 (1985) ...................................................................................11

*Nelson v. Walsh*, 60 F. Supp. 2d 308 (D.Del. 1999)........................................................................5

*Rogers v. Powell*, 120 F.3d 446 (3d Cir. 1997) ............................................................................10

*Pearson v. Callahan*, 555 U.S. 223 (2009)...................................................................................11

*Saucier v. Katz*, 533 U.S. 194 (2001) ...........................................................................................11

*Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010) ....................................................4

*Scott v. United States*, 436 U.S. 128 (1978)...................................................................................7

*Sharrar v. Felsing*, 128 F.3d 810 (3d Cir. 1997) ...........................................................................11

*Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125 (3d Cir. 1995) ....................................5

*Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003) ............................................................................ 8

*Smith v. Ostrum*, 2000 U.S. Dist. LEXIS 10115 (D. Del., June 29, 2000)......................................4

*Tennessee v. Garner*, 471 U.S. 1 (1985)........................................................................................8

*Terry v. Ohio*, 392 U.S. 1 (1968) ....................................................................................................7

*United States v. Kithcart*, 218 F.3d 213 (3d Cir. 2000) ..................................................................8

*United States v. Hernandez*, 872 F. Supp. 1288 (D. Del. 1994) .....................................................9

*United States v. Padilla*, 1997 U.S. Dist. LEXIS 3911 (E.D. Pa. 1997) .....................................8, 9

*United States v. Robinson*, 414 U.S. 218 (1973) ...........................................................................7

*Wayne v. Borough of West Chester*, 891 F.2d 458 (3d Cir. 1989)..................................................6

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) .............................................................................10

## **STATUTES**

42 *U.S.C.* §1983 ...............................................................................................................................1

28 *U.S.C.* §1915 ...............................................................................................................................1

11 *Del. C.* §1442 ..........................................................................................................................3, 8

11 *Del. C.* §1448 ..........................................................................................................................3, 8

11 *Del. C.* §1257 .............................................................................................................................3

## **RULES**

*Fed. R. Civ. P.* 12 (b)(6)............................................................................................................3, 13

*Fed. R. Civ. P.* 56 ........................................................................................................................13

*Fed. R. Civ. P.* 56 (c) .....................................................................................................................4

*Fed. R. Civ. P.* 56 (e) .....................................................................................................................5

## NATURE AND STAGE OF THE PROCEEDINGS

On June 23, 2014, Plaintiff Jacob Santiago ("Plaintiff"), currently incarcerated and proceeding *pro se*, filed a Complaint in the United States District Court for the District of Delaware alleging that Officers Andrew Shaub and Gaetan MacNamara (collectively, "Defendants") violated his Fourth Amendment rights by using excessive force in the course of effecting Plaintiff's arrest on an unspecified date.  (D.I. 2)  Plaintiff brings his claim pursuant to 42 U.S.C. § 1983.  On July 18, 2014, this Court granted Plaintiff's motion to proceed *in forma pauperis*, pursuant to 28 *U.S.C.* § 1915.  (D.I. 4)  On August 18, 2014, Plaintiff filed an "Opening Brief" setting forth additional factual allegations related to the incident underlying the Complaint.  (D.I. 6)

Defendants have filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment, in Lieu of an Answer.  The following is Defendants' Opening Brief in support of their Motion.

## SUMMARY OF ARGUMENT

I.      The Defendant Officers' use of force was objectively reasonable under the totality of the circumstances, and therefore Plaintiff's excessive force claim must be dismissed**.**

II.     The Defendant Officers enjoy qualified immunity from Plaintiff's excessive force claims.

1

## STATEMENT OF FACTS

On January 17, 2014, Defendants were patrolling the area of the 100 block of North Van Buren Street in the City of Wilmington when they observed the Plaintiff walking northbound on Van Buren Street toward Second Street. *Defensive Tactics Report*, A-6. The Officers were in a fully marked Wilmington patrol car and in full uniform. *Initial Crime Report,* A-10. Plaintiff observed the Officers and immediately changed direction and began walking eastbound on Second Street, clutching his waistband. *Id*. The officers recognized this as a sign that Plaintiff was armed. *Id.* Plaintiff then approached an unoccupied parked vehicle, acting as if talking to an occupant in the vehicle. *Id.*

As Defendant MacNamara exited the vehicle to make contact with Plaintiff, Plaintiff fled southbound on North Van Buren Street before the Officers even had an opportunity to issue verbal commands. *Id.;* Plaintiff's Opening Brief (D.I. 6) at P. 3. Defendant MacNamara observed Plaintiff grab his waistband and believed he was accessing a weapon. *Initial Crime Report,* A-10. Defendant MacNamara ordered Plaintiff to stop. *Id.* Plaintiff fled eastbound on Pleasant Street and MacNamara observed him throwing a black revolver under a parked vehicle. *Id.* Plaintiff resisted Officer MacNamara's order by running away from MacNamara. D.I. 6 at p. 1. Plaintiff alleges that Officer MacNamara took 15 to 20 seconds to reach him after Plaintiff finally, allegedly, stopped, and that Officer MacNamara tackled Plaintiff. *Id.* When Plaintiff went to the ground, his hands were under him, and the Defendants ordered Plaintiff to put his hands behind his back. *Id.* Plaintiff did not. *Id.* at p. 2. Plaintiff alleges that Officer MacNamara kneed Plaintiff's back and "stuffed" Plaintiff's face into the ground. D.I. 2 at p. 3. The Defendants were able to wrest Plaintiff's hands out from under him, place Plaintiff's hands behind his back, and put him in handcuffs. D.I.6 at p. 2. Plaintiff complained of a broken arm

2

and was transported to Wilmington Hospital. *Id.* Plaintiff was diagnosed at Wilmington Hospital with a fractured humerus. D.I. 2 at p. 4.

Plaintiff was charged with Carrying a Concealed Deadly Weapon, Possession of a Deadly Weapon by a Person Prohibited, and Resisting Arrest. *Initial Crime Report,* A-10. Plaintiff was arraigned while at Wilmington Hospital. *Id*. Defendants turned custody of Plaintiff over to the Department of Corrections, and Defendants' contact with Plaintiff ended. *Id.*

On August 13, 2014, Plaintiff pled guilty to the following crimes: Carrying a Concealed Deadly Weapon in violation of 11 *Del. C.* § 1442, Possession of a Deadly Weapon by a Person Prohibited in violation of 11 *Del. C.* § 1448, and Resisting Arrest in violation of 11 *Del. C.* § 1257. *See* Superior Court Criminal Docket, A-16-18.

## ARGUMENT

### I. Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and draw all reasonable inferences therefrom in favor of the plaintiff. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the United States Supreme Court set forth the requirement that a complaint must state a "plausible" claim for relief to survive a motion to dismiss. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "the plausibility standard is not akin to a 'probability requirement,'" it does require a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

3

Following *Iqbal*, the Third Circuit Court of Appeals established a three step approach to evaluate a motion to dismiss for failure to state a claim: 1) the court must "tak[e] note of the elements a plaintiff must plead to state a claim;" 2) the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and 3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to relief." *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010), quoting *Iqbal*, 556 U.S. at 675, 679. The Court must "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, (3d Cir. 2012), citing *Iqbal*, 556 U.S. at 678- 679. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The court generally may not consider matters outside the pleadings when adjudicating a motion to dismiss. *Adkins v. Rumsfeld*, 450 F.Supp.2d 440, 444 (D. Del. 2006). However, the court may consider documents integral to or explicitly relied upon in the complaint without converting a motion to dismiss into a motion for summary judgment. *Id.* The court may also consider matters of public record, orders and items appearing in the record of the case without converting a motion to dismiss into one for summary judgment. *See Adkins*, 450 F.Supp. 2d at 444; *Smith v. Ostrum*, 2000 U.S. Dist. LEXIS 10115, at * 5 (D. Del., June 29, 2000).

Additionally, the Court must grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), *cert denied*, 484 U.S. 1066 (1988), and *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d

564, 568 (3d Cir. 1986). "In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations, and must view the facts in the light most favorable to the non-moving party." *Nelson v. Walsh*, 60 F. Supp. 2d 308, 311 (D. Del. 1999), citing *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *See Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 N.10, (1986). However, "[t]he moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." *Carrigan v. State*, 957 F. Supp. 1376, 1381 (D. Del. 1997); *see also Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992). Simply stated, summary judgment is appropriate "where admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Nelson*, 60 F. Supp. 2d at 311.

Once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party cannot produce "concrete evidence from which a reasonable [trier of fact] could return a verdict in [his] favor," then summary judgment for the movants must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue." *Lamb-Bowman v. Delaware State Univ.*, 152 F. Supp.2d 553, 557-558 (D. Del. 2001), citing *Anderson*, 477 U.S. at 249.

A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Wayne v. Borough of West Chester*, 891 F.2d 458, 459 (1989). Indeed, the non-movant must provide "significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249. The moving party "may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987); *Celotex Corp.*, 477 U.S. at 322 (holding that Rule 56 requires summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

In sum, summary judgment serves to "avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Fraser v. Pennsylvania State System of Higher Education*, 1994 U.S. Dist. LEXIS 7409, at *8 (E.D. Pa. June 6, 1994), citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

## II. The Defendant Officers' use of force was objectively reasonable under the totality of the circumstances, and, therefore, Plaintiff's claim must be dismissed.

Even accepting as true the factual allegations in Plaintiff's Complaint and Opening Brief (which Defendants do not), the Defendant Officers' use of force, as alleged, was reasonable under the circumstances confronting them. The Defendants used only the force necessary to end the pursuit and effect the arrest of the Plaintiff, who admits in his filings that he was resisting arrest by fleeing and not releasing his hand, and who was in possession of a firearm.

Where, as here, an excessive force claim arises in the context of an investigatory stop or arrest, the Court must construe the Complaint as "one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons... against

6

unreasonable… seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). As such, the Complaint must be analyzed under the "reasonableness" standard of the Fourth Amendment. *See id*. at 395.

In order to prevail on a Fourth Amendment excessive force claim, a plaintiff must demonstrate that the police officer's use of force was not "objectively reasonable." *Id*. at 397. The specific inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 457. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*., citing *Scott v. United States*, 436 U.S. 128, 138 (1978) and *United States v. Robinson*, 414 U.S. 218, 218 (1973).

The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*., citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. *Id*. In an excessive force claim, the calculus of reasonableness is not hindsight, but rather "reasonableness at the moment," and it "must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-397; *see also, Beckwith v. Sherwood*, 2001 U.S. Dist. LEXIS 24079, at *14 (E.D. Pa. Oct. 11, 2001).

The question of whether the force used to effect an arrest was reasonable requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake." *Id*. at 396. Courts have

7

long recognized that the right to make an arrest or investigatory stop carries with it the right to use some degree of physical force, or the threat thereof, to effect it. *Id*. "The degree of force is dictated by the suspect's behavior." *Clark v. Condon*, 2002 U.S. Dist. LEXIS 17831, at *7 (D. Del. Sept. 20, 2002). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," but rather requires the Court to analyze the facts and circumstances of each particular case. *Graham*, 490 U.S. at 396, quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

To that end, the Court must consider several factors in making its determination, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight, . . . as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (internal citations omitted). The test then is whether the totality of the circumstances justified the particular force used. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

In the present case, the crimes at issue ivolved dangerous felonies – namely, carrying a concealed deadly weapon by a person prohibited, in violation of 11 *Del. C*. § 1442 and 11 *Del. C*. § 1448. Therefore, Plaintiff posed an immediate threat to the safety of the Defendants and any innocent bystanders in the vicinity. Moreover, the alleged use of force took place during the course of an arrest which the Plaintiff was actively evading and resisting. Courts have repeatedly stressed these situations are fraught with danger for police officers. *See United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000); *United States v. Padilla*, 1997 U.S. Dist. LEXIS

3911, at *16 (E.D. Pa., Sept. 12, 1997); *United States v. Hernandez*, 872 F. Supp. 1288, 1294-1295 (D. Del. 1994).  These undisputed facts make clear that the Defendants' use of force, as alleged by the Plaintiff, was reasonable given totality of the circumstances facing the officers.

While it is undisputed that Plaintiff fractured his right humerus in the course of his arrest, courts have consistently ruled that physical injury alone is not sufficient evidence of excessive force.  In *Forrester v. San Diego*, 25 F.3d 804 (9th Cir. 1994), police used a variety of pain compliance techniques to move passive protestors.  *Id*. at 805.  In doing so, some of the protestors sustained physical injuries, including a broken wrist and pinched nerve.  *Id*. Notwithstanding that the resistance was passive, that significant injuries were sustained, and that other options were available, the Ninth Circuit Court of Appeals held the use of pain compliance techniques was reasonable and did not violate the 4th Amendment.  *Id*. at 807.  In contrast, the resistance in the instant matter was not passive.  The crime at issue involved possession of a deadly weapon, active flight from authorities, and failure to obey repeated verbal commands.  As in *Forrester*, the force used in this case was reasonable.

In *Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010), the court found on summary judgment that an officer's use of force did not constitute a constitutional violation even though it resulted in substantial injury.  *Brooks*, 599 F.3d at 1030-31.  There, the plaintiff was stopped for speeding.  When she refused to sign a notice of infraction, she was tased four times and a pain hold was applied before she was pulled out of the car.  *Id*. at 1020-21.  The Ninth Circuit found that such techniques do not constitute excessive force, "**even when they cause pain and injury**."  *Id*. at 1027-28 (emphasis added).  In dismissing the claims, the court held:

> [T]his case presents a less-than-intermediate use of force, prefaced by warnings and other attempts to obtain compliance, against a suspect accused of a minor crime, but actively resisting arrest, out of police control, and posing some slight

9

> threat to officers.  In this situation, we find, assuming all the facts in Brooks's favor, that the Officers' behavior did not amount to a constitutional violation.

*Id*. at 1030-31.

As in *Brooks*, Officers MacNamara and Shaub used only the force necessary against an individual who was actively and admittedly resisting – in this case, fleeing, ignoring the officers' commands, possessing a deadly weapon, and refusing to remove his hands from under his body. Unlike *Brooks*, however, the Plaintiff was not suspected of a minor traffic offense.  Rather, Plaintiff was actively in flight after discarding a handgun in the presence of the officers and was later found guilty of, among other things, possession of a deadly weapon by a person prohibited and concealed carrying of a deadly weapon.  Further, as in *Forrester*, the fact that injuries followed from the use of standard police restraint techniques does not render those techniques unlawful or unconstitutional.

Plaintiff has failed to allege that the force used by Defendants was objectively unreasonable under the circumstances.  As such, his claim for excessive force must be dismissed.

### III.  The Defendant Officers enjoy Qualified Immunity from Plaintiff's Excessive Force Claim and therefore it must be dismissed.

Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Rogers v. Powell*, 120 F.3d 446, 454 (3d Cir. 1997); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  When deciding whether a defendant enjoys qualified immunity, the Court must first determine whether plaintiff has alleged the deprivation of an actual constitutional right.  Second,

it must determine whether that right was clearly established at the time of the alleged deprivation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In determining whether a right was clearly established, the relevant "inquiry is whether a reasonable officer could have believed that his or her conduct was lawful in light of the clearly established law and the information in the officer's possession." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). "A law enforcement officer is entitled to qualified immunity if it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Gilles v. Davis*, 427 F.3d 197, 203-04 (3d Cir. 2005). A qualified immunity analysis "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. at 203.

Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier,* 533 U.S. at 194. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell* v. *Forsyth,* 472 U.S. 511, 526 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* As a result, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter* v. *Bryant,* 502 U.S. 224, 227 (1991) *(per curiam)*.

Defendants in this matter are entitled to qualified immunity first and foremost because no unconstitutional use of excessive force occurred, as detailed above. However, even if the Defendant Officers had used excessive force, which they did not, they are entitled to qualified immunity as it relates to the reasonableness of the force used to effect Plaintiff's arrest because a

11

reasonable officer confronting the situation in which Defendants found themselves would believe Defendants' conduct was lawful. Plaintiff does not dispute the constitutionality of his arrest. He was later convicted of unlawful possession of a deadly weapon. Under the law as it exists, and under the circumstance facing them, the force alleged to have been used by Defendant officers was reasonable, even accepting as true all of the facts alleged in Plaintiff's Complaint and Opening Brief. Even if the officers did tackle, strike, and knee Plaintiff (which they did not), this was part of an effort to stop Plaintiff's admitted active resistance and place him under arrest. What is more, the Defendants knew Plaintiff to be armed. The injury that resulted from Defendants' attempt to place Plaintiff in handcuffs was unintended and does not change the analysis regarding the reasonableness of the force used. This injury was not a result of any alleged striking, kneeing, or tackling, but rather occurred in the course of an action which was indisputably necessary to effect Plaintiff's arrest, i.e., wrest his hand from under his body and place them in handcuffs behind his back. Even if Defendants had subdued Plaintiff in the manner alleged in Plaintiff's Complaint and Opening Brief (which they did not), they had no reason to believe that using strikes or tackling to end the pursuit and effect the arrest of an actively resisting, armed suspect would violate the 4th Amendment or that Plaintiff had any clearly established right not to be arrested in the manner he alleges. For this reason as well, the Defendants are entitled to qualified immunity, and Plaintiff's claims must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants Gaetan MacNamara and Andrew Shaub request that the court dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, grant summary judgment in their favor pursuant to Fed. R. Civ. P. 56.

**CITY OF WILMINGTON LAW DEPARTMENT**

_/s/ Daniel F. McAllister_____
Daniel F. McAllister (I.D. #4887)
Assistant City Solicitor
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175

*Attorney for Defendants Gaetan MacNamara and Andrew Shaub*

Dated: December 19, 2014